IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO TAXI COALITION, PATRICK O'SULLIVAN, SAI LEE, GEORGE HORBAL, ALLIANCE CAB and S.F. TOWN TAXI INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO MUNICIPAL TRANSIT AGENCY; EDWARD D. REISKIN, Director of Transportation; and DOES 1 through 20, <br><br> Defendants. | No. C 19-01972 WHA <br><br> **ORDER GRANTING JUDGMENT ON THE PLEADINGS** |

**INTRODUCTION**

In this action, the City of San Francisco moves for judgment on the pleadings under Rule 12(c). To the extent below stated, the motion for judgment on the pleadings is **GRANTED**.

**STATEMENT**

A prior order provided the facts in full (Dkt. No. 40). In brief, in December 2018, the City of San Francisco implemented a newly promulgated rule. As of February 1, 2019, taxis were no longer universally or uniformly permitted to pick up fare at the airport. Rather, the rule established a tiered system as to which medallion owners were so permitted. Specifically, post-2010 medallion holders were provided greater access to collect airport fares than 1978–2010 medallion holders. This meant the 1978–2010 medallion holders would be segregated from the

post-2010 medallion holders at the airport and relegated to picking up one-third of the fares. Pre-1978 medallion holders were cabined to picking up fares in San Francisco city and banned from picking up fares at the airport. In addition, medallions issued to wheelchair-accessible vehicles remained permitted to pick up fares at the airport but had access identical to the 1978–2010 medallion holders. Medallions leased month-to-month were also banned from picking up fares at the airport (Dkt. No. 1, Exh. B ¶¶ 22–28).

As alleged in the complaint, the purported reasons for this rule were as follows. *First*, the rule aimed to reduce taxi congestion at the airport. Between holding lots and designating curbside areas, the airport can accommodate 476 taxis on site. These spots are often full. Taxis unable to find a spot then circle the terminal waiting for an opening. This leads to congestion (*id.* ¶ 30).

*Second*, the rule aimed to drive revenue to the post-2010 medallion holders. In the years since ride-sharing tanked the taxi industry, this group suffered the most. Specifically, in contrast to the other two groups of medallion holders, this group paid $250,000 for their medallions, financed through crushing loans (*id.* ¶¶ 11–12). These loans remain due.

The procedural history of this action is as follows. In March 2019, six plaintiffs filed suit in California state court. Two plaintiffs, Patrick O'Sullivan and Sai Lee, both hold pre-1978 medallions. One plaintiff, George Horbal, holds a 1978–2010 medallion. Plaintiffs Alliance Cab and S.F. Town Taxi Inc. lease medallions from medallion holders and re-lease those medallions to willing drivers. Plaintiff San Francisco Taxi Coalition is a nonprofit corporation with members who will be adversely affected by the 2018 regulations (*id.* ¶¶ 33–36).

The complaint alleged five claims. Specifically, violations of: (i) both the state and federal constitution's equal protection clause; (ii) both the state and federal constitution's due process clause; (iii) California Government Code Section 11135's prohibition against age discrimination; (iv) the California Environmental Quality Act; and (v) California Public Utilities Code Sections 21690.5 through 21690.10. The complaint also alleged a sixth claim to

preliminarily and permanently enjoin the rule (*id*. ¶¶ 68–85). This claim is strictly remedial and therefore will not be treated as a separate claim.

In April 2019, defendants removed the case here. Defendants are the City and County of San Francisco, the San Francisco Municipal Transit Agency, and the Transit Agency's director, Edward Reiskin (*id*. ¶¶ 37–39). Two motions have proceeded simultaneously. Specifically, on May 9, 2019, defendants moved for judgment on the pleadings under Rule 12(c) (Dkt. No. 12). The next day, the parties stipulated to shorten time to hear plaintiffs' motion for a preliminary injunction (Dkt. Nos. 15–17). Both motions have since been fully briefed.

A hearing on the plaintiffs' preliminary injunction motion was held on May 30, 2019. An order issued denying the motion. The order held that other than irreparable harm, plaintiffs did not show that the rest of the factors weighed towards a preliminary injunction (Dkt. No. 40 at 6).

The hearing on defendants' motion for judgment on the pleadings was subsequently held on June 20, 2019. This order follows.

**ANALYSIS**

Rule 12(c) provides: "[a]fter the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." The analysis under Rule 12(c) is "substantially identical to [the] analysis under Rule 12(b)(6)." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). Specifically, all factual allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citation and footnote omitted).

1. **REQUESTS FOR JUDICIAL NOTICE.**

In a motion brought under Rule 12(c), matters subject to judicial notice may be considered. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).

3

Rule 201(b)(2) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, defendants filed two requests for judicial notice under Rule 201(b)(2) (Dkt. Nos. 13, 39). This second request for judicial notice (Dkt. No. 39) occurred after plaintiffs had the opportunity to respond. Accordingly, this request is **DENIED**.

As to the first request, it contains seven individual requests for notice. The sources for some of the information can be established. Those will be permitted to a limited extent.

Specifically, six of the requested documents have been made publicly available by government entities through a website link (Dkt. No. 13, Exhs. A–E, G). These documents are: (i) San Francisco Municipal Transportation Agency staff report to the San Francisco Municipal Transportation Agency Board of Directors for the calendar held on October 16, 2018, (ii) a report dated May 1, 2018 titled "Evaluation and Recommendations to Improve the Health of the Taxi Industry in San Francisco," (iii) the San Francisco Municipal Transportation Agency Board of Directors' Resolution No. 181016-143, dated October 16, 2018, (iv) a memorandum from San Francisco Municipal Transportation Agency Director to the San Francisco Municipal Transportation Agency Board of Directors, dated December 27, 2018, (v) a memorandum from the Director of Taxis and Accessible Services to The San Francisco Taxi Industry, dated December 27, 2018, and (vi) a copy of the San Francisco Paratransit's "Rider's Guide to San Francisco Paratransit."

Neither party disputes the authenticity of the websites or the accuracy of the information displayed by these documents. This renders *only* the document, date, and information contained therein as available to the recipient appropriate for judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010). To this limited extent, these requests are **GRANTED**.

By contrast, the sources for the remaining document can reasonably be questioned and no information had been provided as to its source in order to establish its accuracy. Specifically, this document is a notice prepared by San Francisco International Airport staff and

4

purportedly posted on a bulletin board in San Francisco International Airport taxi holding Lot 2 (Dkt. No. 13, Exh. F). This request is therefore **DENIED**.

### 2. THE MERITS.

#### A. STATE AND FEDERAL EQUAL PROTECTION CLAUSE AND SUBSTANTIVE DUE PROCESS.

The parties agree that rational basis applies across the board. Under this standard, regulations are "presumed valid, and this presumption is overcome only by a 'clear showing of arbitrariness and irrationality.' " *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (quoting *Hodel v. Indiana*, 452 U.S. 314, 331–32 (1981)). The government's distinctions "need only be drawn in such a manner as to bear some rational relationship to a legitimate state end." *Clements v. Fashing*, 457 U.S. 957, 963 (1982). "[T]hose attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *F.C.C. v. Beach Commuc'ns, Inc.*, 508 U.S. 307, 315 (1993).

There is "no requirement that the statute *actually* advance its stated purpose; rather, the inquiry focuses on whether the governmental body *could* have had no legitimate reason for its decision." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 690 (9th Cir. 1993) (internal quotation marks and citation omitted). As to equal protection, "[c]lassifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the State's goals and only if no grounds can be conceived to justify them." *Clements*, 457 U.S. at 963. "If a statute is not arbitrary, but implements a rational means of achieving a legitimate governmental end, it satisfies due process." *Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir. 1997) (citation omitted). Federal and California law apply the same test for both equal protection and due process violations. *See Walgreen Co. v. City and Cty. of San Francisco*, 185 Cal. App. 4th 424, 434 n.7 (2010); *Love v. State Dep't of Educ.*, 29 Cal. App. 5th 980, 989 (2018).

The rule had two pertinent aims according to the complaint: (i) to decrease congestion at the airport and (ii) to help the post-2010 medallion holders who have been disproportionately crushed by the industry downturn. But another aim exists: to increase taxi pickups in the city (Dkt. No. 13, Exh. A at 2). These are all legitimate state purposes. By prioritizing the post-

5

1 2010 medallion holders at the airport and cabining the pre-1978 medallion holders to the city a
2 rational connection to these objectives has been established. That is the end of it.

Plaintiffs focus on one footnote from one court of appeals decision which held that "mere economic protectionism for the sake of economic protectionism is irrational with respect to determining if a classification survives rational basis review." *Merrifield v. Lockyer*, 547 F.3d 978, 991 n.15 (9th Cir. 2008). But the rule in question has not been implemented for the mere sake of economic protectionism. This footnote is accordingly inapposite.

### B. AGE DISCRIMINATION.

California Government Code Section 11135(a) provides that no person "shall, on the basis of . . . age . . . be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is . . . funded directly by the state or receives financial assistance from the state." The entirety of plaintiffs' briefing on this claim spans less than a page and a half. Further, the parties battle over whether the programs have received financial assistance from the state. But this order need not address those arguments. This claim can instead be dismissed on a much more straightforward ground. The overwhelming evidence is that the rule has been promulgated on the basis of taxicab efficiency and propping up those medallion holders most heavily hurt by the industry-wide crisis. No evidence of discrimination on the basis of age has been put forward.

Even an argument of disparate impact remains unfounded. The complaint itself avers that the average age of a medallion holder is sixty-one, whereas the average age of the pre-1978 medallion holder is seventy-four (Dkt. No. 1, Exh. B ¶ 105). This age gap alone without more, does not suffice to substantiate a claim for age discrimination.

### C. THE CALIFORNIA ENVIRONMENTAL QUALITY ACT.

The California Environmental Quality Act requires that public agencies conduct a preliminary review to determine whether an action is subject to the Act. *Muzzy Ranch Co. v. Solano Cty. Airport Land Use Comm'n*, 41 Cal. 4th 372, 379–80 (2007). The threshold question is whether an activity is defined as a "project" under California Code of Regulations Section 15378. If it is not a "project" it is not subject to CEQA. *Id*. at 360. "Ordinances

6

passed by cities are clearly activities undertaken by a public agency and thus potential 'projects' under CEQA." *Union of Med. Marijuana Patients, Inc. v. City of San Diego*, 4 Cal. App. 5th 103, 113 (2016) (emphasis omitted).

Section 15378 defined a "project" as "the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment." Here, the Transit Agency concluded the rule changes were not a "project" under CEQA.

Plaintiff accuses the Transit Agency of giving the analysis short-shrift. This argument relies on the theory that post-2010 taxis will drive to the airport without passengers to take advantage of the new rule. At the same time, the other two categories of medallion holders will rush back to the city because of the lack of options at the airport. These runs without passengers will create toxic gas emissions. "Common sense leads us to conclude these concerns are too speculative or unlikely to be considered reasonably foreseeable." *Union of Med. Marijuana Patients, Inc. v. City of Upland*, 245 Cal. App. 4th 1265, 1276 (2016) (internal quotations omitted).

### D. THE CALIFORNIA PUBLIC UTILITIES CODE.

The complaint alleged a violation of the California Public Utilities Code. Defendants moved for judgment on the pleadings on the claim. Plaintiffs did not address the claim in their briefing. They have accordingly waived their arguments. *See Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 129 (2011).

### CONCLUSION

For the foregoing reasons, the motion for judgment on the pleadings is **GRANTED**. Final judgment shall be entered separately. This case is now ready for the court of appeals.

**IT IS SO ORDERED.**

Dated: June 20, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7